UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,                          Case No. 97-cr-50038-3

v.                                                      Honorable Thomas L. Ludington

VINCENT EDWARD INGRAM,

            Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITH PREJUDICE**

Defendant was indicted by a grand jury on August 21, 1997. ECF No. 1. On July 8, 1998, Defendant was indicted on a third superseding indictment with one count of conspiracy to distribute marijuana and one count of interstate travel to commit a crime of violence. ECF No. 248 at PageID.13–14. He was convicted of both counts at a jury trial and sentenced by Judge Gadola to 40 years' incarceration for the conspiracy charge and life for the interstate travel charge, to be served concurrently. *Id.* His motion to vacate was later denied. *Id.* On June 11, 2018, Defendant's case was transferred to the undersigned.

On March 10, 2021, Defendant filed a motion for compassionate release. ECF No. 292. Due to mailing delays, his motion was not docketed until March 23, 2021. Plaintiff, the United States of America ("the Government"), filed a response on April 29, 2021 upon direction from this Court. ECF Nos. 293, 295. Defendant timely filed his reply brief. ECF Nos. 299, 300, 301. This Court also received multiple letters of support for Mr. Ingram. *See e.g.*, ECF No. 302. For the following reasons, his Motion will be denied.

# I.

The United States is facing an unprecedented challenge with the novel coronavirus ("COVID-19") pandemic.

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). In light of the threat posed by COVID-19, Defendant seeks a reduction of her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 960 F.3d 831, 835–36 (6th Cir. 2020).

Defendant included a copy of his request for compassionate release from the BOP in his Motion. ECF No. 292 at PageID.176. The request was filed on February 1, 2021. Defendant waited until March 10, 2021 to file his Motion with the Court. Accordingly, Defendant has exhausted his administrative remedies.

### B.

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant brings this Motion on his own behalf, § 1B1.13 is

"inapplicable," and "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite the lack of express guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See Jones*, 980 F.3d at 1102 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See Elias*, 984 F.3d at 520. Under the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2)

the prison where the defendant is held has a severe COVID-19 outbreak."[1] *Id.* (quoting *United States v. Hardin*, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at 521.

Defendant explains that he has served 23 years in prison. He states that he "was always ready, willing and able to plea[d] guilty and accept responsibility to something other than a life sentence, but the government never made a plea offer to anything." ECF No. 292 at PageID.163-64. He expresses frustration that he "is the only one who has served over twenty three [sic] years in prison and everyone else is either out or [was] never charged." ECF No. 292 at PageID.165. He thus claims that he "received a much harsher penalty than the rest of his co-defendants" and that "[t]his is an extraordinary and compelling reason to reduce [his] sentence." *Id.* "Judicial second looks," he claims, "are one way to remedy such injustices." *Id.*

Defendant also argues that his rehabilitation efforts are evidence of an extraordinary and compelling reason for a sentence reduction, *id.* at PageID.166, and highlights the spread of COVID-19 in federal prisons. He provides that he is 59 years old and suffers from type II diabetes, hypertension, and obesity. *Id.* at PageID.171. He also claims that he suffers from diverticular disease and duodenitis gastritis and has gastric and duodenal ulcers. *Id.* at PageID.171–72.

In response, the Government emphasizes that Defendant did not provide any evidence of his underlying medical conditions, that there are no current cases of COVID-19 at Greenville FCI, and that he has been fully vaccinated with the Pfizer vaccine since April 2021. ECF No. 295 at PageID.208–09. The Government also addresses the 3553(a) factors, emphasizing that "[a]s a part

---

[1] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 984 F.3d at 521 n.1.

of a lengthy, multistate conspiracy to traffic in over 1,000 pounds of marijuana, Ingram murdered an informant. It was cold-blooded and premeditated. This was not the impetuous act of an emotional youth." *Id.* at PageID.200.

Defendant's significant rehabilitation efforts are to be commended. Further, obesity, diabetes, and hypertension are likely to increase an individual's risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/ZD7Z-AN9J] (last visited July 7, 2021). However, there are no active cases of COVID-19 at Greenville FCI where Defendant is housed. *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus [https://perma.cc/X946-FY8N] (last visited July 7, 2021). Most importantly, Defendant has been fully vaccinated with the Pfizer-BioNTech vaccine. The CDC explains that the Pfizer-BioNTech vaccine was shown to be "95% effective at preventing laboratory-confirmed COVID-19 illness in people without evidence of previous infection." *Pfizer-BioNTech*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html [https://perma.cc/2W3C-XLQX] (last visited July 7, 2021). As this Court has previously held, "absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that [her] susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *See* ECF No. 45 in case 17-20753. Further, Defendant's disparate sentence as compared to his co-conspirators is not an extraordinary and compelling reason to amend his sentence. As provided below, Defendant murdered a co-conspirator in cold blood, unlike his fellow co-defendants. *See infra* Section I.C.

Defendant, in his reply, seems to argue that the fact that his sentence may be different today and the fact that the government did not offer a plea bargain, is "extraordinary and compelling

enough to grant a sentence reduction in this case." ECF No. 301 at PageID.238. Defendant also cites several other cases where defendants convicted of violent crimes demonstrated that they were reformed and were therefore granted home confinement. However, those cases involved significant medical conditions or were based on different law. *See e.g.*, *United States v. Greene*, No. 71-cr-1913 (KBJ), 2021 U.S. Dist. LEXIS 19243 (D.D.C. Feb. 2, 2021) (finding that defendant was eligible for compassionate release under sentencing guideline commentary); *United States v. Bass*, No. 97-80235-1, 2021 U.S. Dist. LEXIS 11719 (E.D. Mich. Jan. 22, 2021) (granting compassionate release where government conceded that defendant suffered from a serious medical condition, his prison had the second highest number of COVID cases, and he had not been vaccinated); *United States v. Sweet*, No. 07-20369, 2021 U.S. Dist. LEXIS 69177 (E.D. Mich. Apr. 9, 2021) (finding vaccinated defendant's health extraordinary and compelling because of his age (73) and chronic kidney disease).

Accordingly, Defendant has not demonstrated an extraordinary and compelling reason for release.

## C.

In addition to having no extraordinary and compelling reason for release, a sentence reduction is also not warranted under the § 3553(a) factors.

As stated previously, there is no "applicable policy statement" in this case because Defendant, not the BOP, has moved for compassionate release. Consequently, step two of the § 3582(c)(1)(A) analysis is skipped, and the final issue is whether a sentence reduction is warranted by the applicable factors set forth in § 3553(a). *See Jones*, 980 F.3d at 1111. The factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…

(5) any pertinent policy statement…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "District judges maintain an 'obligation to provide reasons' in both sentencing-modification decisions, and traditional sentencing decisions." *Jones*, 980 F.3d at 1112 (citations omitted).

> District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision. But as long as the record as a whole demonstrate that the pertinent factors were taken into account by the district court, a district judge need not specifically articulate its analysis of every single § 3553(a) factor.

*Id.* at 1114 (internal quotations and citations omitted).

The Government summarized the facts of the case well in its response brief:

From 1995 through 1997, Vincent Ingram participated in a conspiracy to ship over 1,000 pounds of marijuana from Texas to Michigan. After Vincent Brigham, one of the "mules" who was transporting marijuana, was arrested in Texas in January of 1997, Brigham agreed to cooperate with the Drug Enforcement Agency. As a part of that cooperation, Brigham arranged a meeting with Ingram at which they were both arrested, and then released on bond on January 22, 1997. On February 1, 1997, Ingram flew to Michigan, rented a car, and drove to a middle school where

> Brigham was planning to play basketball. Ingram drove up to the school, and shot
> Brigham in the head multiple times, killing him.

ECF No. 295 at PageID.191–92. Ingram's actions were "cold-blooded and premediated. This was not the impetuous act of an emotional youth." *Id.* at PageID.200. This is also not his first violent criminal conviction. Previously, he beat a victim with a wooden table leg during a robbery, "was the driver of a vehicle with two loaded handguns, a loaded shotgun, and suspected marijuana and cocaine," and while in prison, he "possessed a weapon and received a consecutive sentence." *Id.* He was also convicted of unlawful carrying of a firearm after his release. *Id.*

Defendant has three relevant disciplinary incidents: assault without serious injury, use of drugs/alcohol, and possession of a dangerous weapon. *Id.* at PageID.200–01. To Mr. Ingram's credit, he has had no disciplinary incidents since 2008. Additionally, the letters of support indicate that Mr. Ingram is learning how to change his behavior and interact in a positive manner with those around him. Mr. Ingram's significant achievements and mentorship are commendable. ECF No. 292 at PageID.183.

Defendant was given a harsh sentence—life. However, he murdered his co-conspirator in cold blood. He also has a history of recidivism upon his release from prison. Accordingly, the nature of the offense and the need to reflect the seriousness of the offense and to adequately deter future criminal conduct weigh in favor of Defendant serving the remainder of his sentence. *See* 18 U.S.C. §§ 3553(a)(1), (2)(B)–(C).

**II.**

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 292, is **DENIED WITH PREJUDICE**.

Dated: July 15, 2021                                        s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge